QUIMBY N. EVANS & others *vs*. COUNTY OF MIDDLESEX.

Suffolk. March 24, 1911. — July 3, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Contract*, Construction, Performance and breach. *Practice,* Civil, Findings by trial judge, Exceptions. *Architect*. *Evidence*, Presumptions and burden of proof.

In an action of contract against a county with a declaration containing a count upon a contract in writing for the erection of a power electric and heating plant by the plaintiff for the defendant, performance of which was alleged to have been stopped unjustifiably by the defendant, and a count upon a *quantum meruit* for work done and materials furnished under the contract, it appeared that the contract provided that the work was to be done and the materials were to be furnished "under the direction of an engineer selected by the architect and to the satisfaction of the architect and such engineer," who were to be " the sole

judges as to the fitness of the work and materials," and that, in case " said work or materials . . . shall be unsatisfactory to the said architect" and upon the plaintiff being notified thereof in writing, the plaintiff was to remove the unsatisfactory work or materials and to supply in place thereof " the work and materials satisfactory to the architect." It also appeared that upon the plaintiff's proposing to use in the performance of the contract a certain kind of pipe covering, the architect notified him not to do so but to use a kind made by a certain manufacturer, and that, upon the plaintiff persisting in his course, the architect terminated the contract. An auditor to whom the case was referred found that the covering that the plaintiff had proposed using conformed to the requirements of the wording of the contract and that he could not find that it was inferior in quality to that demanded by the architect, that the architect thought that the covering specified in the contract was made only by the manufacturer whose product he insisted upon, but that he was mistaken. The case subsequently was heard by a judge without a jury and there were in evidence the auditor's report, certain documents, and oral testimony, the weight of which seemed strongly to show that the plaintiff complied with the terms of the contract and that the architect was wholly without justification in fact for the action he took, but there was some evidence tending to show that only the kind of covering insisted upon by the architect would satisfy the terms of the contract. The judge found for the defendant, and the plaintiff alleged exceptions. *Held*, that under the contract the architect was constituted an arbitrator to determine practical questions of performance that might arise during the progress of the construction, and, so long as he acted honestly and with reasonable efficiency, his action was binding on the parties; that the evidence was not quite so conclusive as to make no finding reasonably possible except that the architect had acted unreasonably, capriciously or fraudulently, and therefore that the exceptions must be overruled.

Where at the trial of an action an affirmative issue must be established by one party upon evidence, a part of which is oral, ordinarily a ruling that such party as matter of law is entitled to recover cannot be given.

A contract in writing between a county and one who agreed to erect for the county a power electric and heating plant provided that the work was to be done and the materials were to be furnished "under the direction of an engineer selected by the architect and to the satisfaction of the architect and such engineer," and that, in case " said work or materials . . . shall be unsatisfactory to the said architect," and upon the plaintiff being notified thereof in writing, the plaintiff was to remove the unsatisfactory work or materials and supply in place thereof " the work and materials satisfactory to the architect." The contract required the use of a certain pipe covering called " Air Cell Class A." The contractor proposed to use a covering which he contended answered that description, but the architect refused to accept it, and insisted that a covering made by a certain manufacturer should be used, and, upon the contractor persisting in his course, the architect terminated the contract. At the trial of an action by the contractor against the county for breach of the contract, there was evidence to substantiate the contention of the architect, as well as evidence tending to show that he was mistaken and ignorant. The contractor asked the presiding judge to rule that " if it is found that the covering furnished by the plaintiff was not inferior in quality, or otherwise, to that" which the architect insisted upon, " the architect and engineer had no legal right to reject the same for reasons stated by them in their evidence." The ruling was refused, the judge found for the defendants; and the contractor alleged an exception.

*Held,* that, aside from the fact that the ruling requested a finding of fact which the judge had a right to determine against the plaintiff, so that it might have been refused properly on that ground alone, the ruling asked for did not contain an accurate statement of law, because, under the above quoted provisions of the contract, a rejection of the covering which the contractor proposed to use might have been within the legal right of the architect and engineer if they acted in good faith and not whimsically, even though they acted somewhat ignorantly or mistakenly.

By a contract in writing relating to the erection for a county of a power electric and heating plant, approval by the county commissioners of all sums to be paid for labor and materials besides those required by the contract was necessary and a method of arbitrating disputes was provided for. It also was provided that the contractor should not be entitled to demand or receive payment for any portion of the work done or materials furnished " until each and all of the specifications " of the contract " are complied with and the architect shall have given his certificate to that effect, and until all disputes, disagreements, and questions between the parties . . . affecting the right to any portion of the amount claimed shall have been settled as above provided for." The architect under other provisions of the contract caused the contractor to cease work and the contractor brought an action against the county upon an account annexed for labor and materials furnished in addition to those required by the contract, at the trial of which it appeared that the labor and materials were ordered in writing by the county commissioners representing the county, and that the architect never had fixed the fair value of them because, as he testified, " there was no necessity of my approving them until the final adjustment of the accounts." Requests for arbitration were made which came to nothing. The judge found for the defendant and the plaintiff alleged exceptions. *Held,* that the finding was warranted, since the jury might have found that the requirement in the contract of approval by the county commissioners of payments for items not called for by the contract was not waived.

CONTRACT, with a declaration described in the opinion, for sums alleged to be due to the plaintiffs for work done and materials furnished upon a power electric and heating plant for the county buildings of the defendant in that part of Cambridge called East Cambridge. Writ dated October 17, 1899.

The case was referred to Henry E. Warner, Esquire, as auditor, and in the Superior Court was heard by *Hardy,* J., without a jury, upon the auditor's report and other evidence, both oral and documentary.

At the close of the evidence the plaintiffs asked the trial judge to rule as follows:

" (1) That upon all the evidence the plaintiffs are entitled to recover.

" (2) That the plaintiffs, by offering to supply an air cell class A covering, fulfilled the terms of their contract.

" (3) That if it is found that the covering furnished by the

plaintiffs was not inferior in quality, or otherwise, to that of the Asbestos Paper Company, the architect and engineer had no legal right to reject the same for the reasons stated by them in their evidence.

" (4) That on all the evidence the architect did not exercise that judgment and capability required of an architect with such powers as are delegated to him under the contract.

" (5) That on all the evidence the engineer did not exercise that judgment and capability required of an engineer with such powers as are delegated to him under the contract.

" (6) That the plaintiffs had a right to use any covering of a kind embodied in the term ' Air Cell Class A,' and that the architect and engineer could only refuse to accept the same because of quality, and that on all of the evidence it appears that neither the architect nor the engineer exercised any judgment on the question of quality.

" (7) That the burden of showing good faith in the exercise of the power vested in the architect and engineer is on the defendant; and that from all the evidence it does not appear that either the architect or the engineer had sufficient knowledge of air cell sectional coverings to exercise the rights given them under the contract.

" (8) That the plaintiffs, in offering the covering which they did, fulfilled the terms of their contract, and upon all the evidence the defendant failed to show any legal justification for not accepting the same.

" (9) That upon all the evidence the architect failed to exercise the good faith and judgment legally required of him, and his failure to approve the covering offered by the plaintiffs does not bar them from a recovery in this action.

" (10) That upon all the evidence the engineer failed to exercise the good faith and judgment legally required of him, and his failure to approve the covering offered by the plaintiffs does not bar them from a recovery in this action."

The judge refused to rule as requested by the plaintiffs, and found for the defendant.    The plaintiffs alleged exceptions.

The facts are stated in the opinion.

*J. A. Brackett,* for the plaintiffs.

*G. L. Mayberry,* (*J. M. Gibbs* with him,) for the defendant.

RUGG, J. This is an action of contract. The declaration contains five counts, only four of which are now material. The first count is upon a written contract between the plaintiffs and the defendant, by which the former undertook to erect a power electric and heating plant for the defendant, and alleged partial performance by the plaintiffs and unreasonable refusal by the defendant to permit them to complete it. The third and fourth counts are for work done and materials supplied, as extras to the contract. The fifth count is upon a *quantum meruit* for the same work claimed under count one. The answer sets up that the contract did not comply with St. 1898, c. 170, or St. 1897, c. 137, and that the work under the contract was not done as required by it to the satisfaction of the architect, who for this reason acting under the contract stopped further performance of it. The case was sent to an auditor, who found the facts in favor of the plaintiffs. It was thereafter tried upon the auditor's report and additional evidence, part of which was oral, before a judge of the Superior Court, who found generally for the defendant. The case is brought here by the plaintiffs' exceptions to the refusal of the trial judge to grant certain rulings.

The contract provided that the work was " A. . . . to be done and materials furnished under the direction of an engineer selected by the architect and to the satisfaction of the architect and such engineer. . . . And in case . . . said work or materials . . . shall be unsatisfactory to the said architect, then the said party of the second part shall, on being notified thereof, in writing, by the said architect, immediately remove such unsatisfactory work or materials, and supply the place thereof with other work and materials satisfactory to the architect." " B. . . . all work contemplated and described by the plans and these specifications and this contract shall be done to the satisfaction of the said architect and engineer . . . and who shall be the sole judges as to the fitness of the work and materials as herein set forth. If any objection is made by the architect or engineer to any work or materials, then the said party of the second part shall remove such unsatisfactory work and materials." " C. And if, at any time, any of the work mentioned in said specifications is not progressing, or any materials are not in accordance with the said '

specifications, to the entire satisfaction of the said architect, after five days' notice having been served on the said party of the second part by the said architect, then the said party of the first part shall have the right to enter upon and take possession of said work, and remove all materials that are considered by said architect unfit for said work, and furnish suitable materials instead therefor." The trouble arose over the furnishing of " Sectional Covering . . . Air Cell Class A " required by the specifications. The plaintiffs provided a kind of covering for pipe covering, which, they contended, complied with this description, and the architect contended that it did not, and on refusal by the plaintiffs to substitute he gave the notice to remove the materials, and subsequently to terminate the contract. The auditor found that the covering furnished by the plaintiffs was " Air Cell Sectional Covering Class A," and was so known in the trade, and was unable to find that it was inferior in quality to that demanded by the architect, which was manufactured by a particular manufacturer alone, and that the engineer and architect both supposed that the only kind of covering which would conform to the specification was that manufactured only by a particular manufacturer. He does not find that this was through corruption, but the inference appears to be that it was through ignorance. At the trial before the Superior Court there was some evidence tending to show that the goods furnished by the plaintiffs did not comply with the specification in that Class A covering meant a 5-ply covering, while that furnished by the plaintiffs was 4-ply covering. The weight of the evidence including the auditor's report seems strongly to support the view that the plaintiffs complied with the terms of the contract, and that the architect was wholly without justification in fact for the action he took, yet under the familiar rule that the findings of fact of a trial court are not open to revision by an appellate tribunal and can be set aside only when they have no foundation in evidence, we cannot disturb a general finding for the defendant. The evidence is not quite so conclusive as to enable us to say that no finding was reasonably possible, except that the architect acted unreasonably, capriciously, arbitrarily, wilfully or fraudulently. *Harper* v. *Dewey,* 191 Mass. 411. *Handy* v. *Bliss,* 204 Mass. 513. The architect by the terms of the con-

tract was constituted an arbitrator by the parties to determine practical questions of performance that might arise during the progress of the construction. So long as he acted honestly and with reasonable efficiency his action was binding upon the parties. *Norcross* v. *Wyman*, 187 Mass. 25.

The first ruling asked for by the plaintiffs, which was a general one, that they were entitled to recover, could not have been given properly. The burden of proof was upon the plaintiffs, and where an affirmative issue must be made out by one party upon evidence, a part of which is oral, ordinarily such a ruling cannot be given as matter of law.

The second ruling called for a finding of fact, which, by refusing to give, the trial judge apparently decided adversely to the plaintiffs. In view of the finding which must have been made in order to refuse the second prayer, the third was also properly refused. Moreover this prayer was not quite an accurate statement of the law. It might be that " the covering furnished by the plaintiffs was not inferior in quality or otherwise to that of the Asbestos Paper Company," and yet a rejection of it might be within the legal right of the architect and engineer acting in good faith and not whimsically, even though somewhat ignorantly or mistakenly.

The fourth, fifth, seventh and eighth requests ask for findings of fact, which by its refusal the court seems not to have been able to make.

The sixth prayer called for a ruling of law which was correct in its terms but for a finding of fact which it appears from the other findings of fact requested the court was unable to make.

The eighth and ninth prayers were requests for rulings of law based upon a certain construction of all the evidence. But, as there was some slight evidence that a five-ply covering alone would satisfy the terms of the contract, it does not appear that the facts existed which were assumed in the prayer.

The contract also provided that the plaintiffs should not be entitled to demand payment for any portion of the work done or materials furnished " until each and all of the stipulations " contained in the contract " are complied with and the architect shall have given his certificate to that effect, and until all disputes, disagreements, and questions between the parties hereto, affect-

ing the right to any portion of the amount claimed shall have been settled as above provided for." It was found by the auditor and does not appear to have been disputed at the trial, that the labor and materials referred to in the third and fourth counts were in addition to that required under the contract, and were ordered in writing by the county commissioners, who represented the defendant. The fair value to be added to the contract price was not fixed by the architect as required by the contract, for the reason as testified by him that "There was no necessity of my approving them until the final adjustment of the accounts." Requests for arbitration were made, but came to nothing. A clause in the contract required that the commissioners should also approve the additional sum to be paid for all additions to the contract. This was a detail of the contract which might have been waived, but whether it was waived or not was a fact which it may be inferred from the general finding in favor of the defendant the trial judge was unable to make. The bill of exceptions does not state that it contains all the material evidence, and the defendant has taken this point in argument. Exceptions which depend upon a finding of fact may be disposed of on this ground. *Appleton* v. *O'Donnell*, 173 Mass. 398. *York* v. *Barstow*, 175 Mass. 167. *Cohen* v. *Longarini*, 207 Mass. 556. But we have placed the decision on a broader ground.

Although the case appears to be one of great hardship to the plaintiffs, the governing rules of law make no other result possible upon these exceptions.

*Exceptions overruled.*