Merrimack,  
March 1, 1938.

MABEL B. AUSTIN *v.* BOSTON & MAINE RAILROAD.

CLELAND AUSTIN *v.* SAME.

DONALD KNOWLTON, *Adm'r v.* SAME.

RICHARD AUSTIN *v.* SAME.

MARGARET AUSTIN *v.* SAME.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the plaintiffs.

*Demond, Woodworth, Sulloway, Piper & Jones (Mr. Piper* orally), for the defendant.

WOODBURY, J. The defendant's exceptions to the denial of its motions that the verdicts be set aside have been neither briefed nor argued and are understood to have been waived. The only issues before us, therefore, are those raised by the defendant's exceptions to the denial of its motions for nonsuits and directed verdicts.

Three claims of negligence are made by each plaintiff and these claims are alike in each case. They are that the defendant failed to give due warning by whistle and bell of the approach of the train, that it failed to maintain an adequate lookout for travelers upon the highway and that it failed to provide adequate warning signs and devices at the crossing. We incline to the view that each claim of negligence is substantiated by the evidence, but we need express no opinion upon either the first or the second because the evidence on the third is clearly sufficient to support the verdicts. *Phillips* v. *Railroad,* 81 N. H. 483; *Crook* v. *Parkhurst, ante,* 280.

The defendant operated four trains a day over the crossing at which the accident occurred. The locomotive involved in the accident was so constructed that the engineer did not have a clear view ahead and to his left and the defendant provided no other employee in the cab one of whose duties, like that of a fireman on a steam locomotive, would be to maintain a lookout in the direction in which the engineer was unable to see. The highway over which the plaintiffs were traveling was not an infrequently used dirt road as in *Despres* v. *Railroad,* 87 N. H. 427, but was a hard surfaced state highway subjected to a substantial amount of traffic. The railroad right of way did not cross the highway at right angles nor was it in plain view for a long distance along the highway. The covered bridge over the Contoocook River to the east, the curve and embankment to the west, and a growth of weeds and bushes beside the track both north and south of the crossing, coupled with the wooded nature of the country-side in the vicinity, all operated to obscure the tracks from the view of users of the highway. These "special features of pertinent bearing" of the crossing (*Stocker* v. *Railroad,* 83 N. H. 401, 405), considered in the light of the manner in which the defendant saw fit to operate its locomotive of the type described (*Collins* v.

*Hustis*, 79 N. H. 446, 449), are clearly more than sufficient to raise an issue of fact for the jury as to whether or not the disk and cross-arm signs maintained by the defendant at this crossing were all that due care required. *Cyr* v. *Railroad*, 88 N. H. 278, 280, and cases cited.

The defendant argues that even if its negligence in this respect could be found, still it would not be liable therefor because there is nothing to indicate that more efficient warning devices would have been seen and heeded by the driver of the plaintiff's car. The argument is that because Mabel failed to see either of the railroad signs which were admittedly there at the time of the accident she must have been oblivious to her surroundings and so would not have seen any other signal which might have been placed at the crossing.

This argument cannot be accepted because it is based upon only part of the evidence. It ignores the testimony to the effect that at and just prior to the time of the accident the visibility was very poor due to the heavy rain which was falling and to the rain drops on that part of the windshield not covered by the wiper. It also ignores the fact that under such circumstances the attention of an automobile driver would be largely absorbed by the hills and curves in the highway and the narrow covered bridge through which that highway led. The plaintiff Mabel testified that as she descended the hill toward the river she saw a car coming toward her which she knew she might meet on the bridge and, having seen the highway warning signs, did not know whether or not it was wide enough to permit them to pass. She passed this car safely on the westerly half of the bridge and she then directed her attention beyond the crossing to the road ahead where it disappeared from view behind the embankment. She did not see either of the crossing signs and she did not know that she was coming to a crossing until she was about twenty feet from it when she happened to glance to her right and saw the approaching train. She immediately applied her brakes but was not quite able to stop in season to avoid the collision.

From this evidence it could reasonably be found that the crossing was within the range of her vision as she approached it, that she was making use of her faculties of observation, and that she was ready for instant action should she receive warning of danger in her path. This evidence is sufficient to raise the inference that a light and bell signal, which is obviously more efficient than a cross-arm sign to penetrate the obscurity caused by a storm, would have been seen and

responded to by Mabel in season for her to have avoided the accident by an earlier application of the brakes.

But little needs to be added to what has already been said to show that Mabel's contributory negligence was not established as a matter of law. While she undoubtedly failed to see all of the pertinent features of the landscape, it is equally undoubted that she saw some of them. She saw the highway signs and they directed her attention to the salient features of the road over which she was about to pass. These features, coupled with the condition of the weather and the state of the traffic, were of a nature to require her almost undivided attention. She failed to see the railroad-crossing signs, but that failure on her part might reasonably be found to have resulted from either the poor visibility due to the storm, or the distractions of present and prospective highway traffic, or the difficulties incident to driving over the highway. *Jones* v. *Railroad*, 83 N. H. 73; *Carbone* v. *Railroad*, ante, 12. It could reasonably be found that Mabel used some care; it was for the jury to say whether or not she used enough. *Feuerstein* v. *Grady*, 86 N. H. 406.

The recent case of *Allison* v. *Railroad*, 88 N. H. 420, upon which the defendant relies, is clearly distinguishable from the case at bar. In that case the weather conditions were not such as to have obscured the view, and the driver of the car saw none of the salient features of the landscape. In the instant case the reverse is true as to weather conditions, and the driver of the car was paying some attention to her surroundings.

All of the cases cited by the defendant on the issue of Mabel's contributory negligence fall into either one or the other of two categories. They are either cases in which the highway traveler was fully aware of his approach to a crossing and either failed to look, or looking failed to see what must have been clearly within his view; or else they are cases in which the traveler did not know of his entrance upon a crossing when the circumstances were such that he would have known it had he given the slightest attention to objects clearly within his view. The instant case does not fall into either of these categories. It obviously does not belong in the first because Mabel was unfamiliar with the road. It does not belong in the second because, as appears above, it could be found that her failure to see either the signs, the crossing or the tracks was not necessarily due to her inattention but might have been caused by the poor visibility, the distractions of traffic or the nature of the highway.

The defendant makes no claim that the decedent was negligent

but it does claim that Robert and Margaret were. The latter were respectively 12 and 16 years old at the time of the accident. They were riding on the back seat and as they crossed the bridge and approached the crossing they had their eyes closed. There is no claim that at any time before the accident they had any reason to question the care or skill of their driver or any reason to anticipate danger ahead. Construing their conduct in the light most favorable to the defendant, the most that can be said is that they were to all intents and purposes asleep. Even this, however, would not prove their contributory negligence as a matter of law. *Gilbert* v. *Joyal, post,* ——.

The defendant's motions for nonsuits and directed verdicts were properly denied.

*Judgments on the verdicts.*

ALLEN, C. J., is of the opinion that the plaintiff Mabel was conclusively negligent; otherwise he concurred; the others concurred.